## CHAMPLIN HARDWARE CO. v. CLEVINGER.

No. 20163.    Opinion Filed June 7, 1932.

Nathan Scarritt and McKeever, Moore & Elam, for plaintiff in error.

Dyer & Smith, for defendant in error.

KORNEGAY, J.   This is a proceeding in error to review the action of the district court of Garfield county, Honorable Charles Swindall being the trial judge.

The petition in the case charges that the defendant operated a general hardware business in Enid, Okla., on the 5th of May, 1928, and that it was selling sporting goods equipment and golf sticks and other golf apparatus. That in order to induce customers to buy the golf equipment it maintained an apparatus to enable the purchaser to judge of the equipment, by testing his golfing ability with the clubs on what might be called a measuring machine, referred to in the evidence as a "golfette." There are further allegations of making no provision to guard other customers against danger from the swinging of the golf clubs, and of the allegation of plaintiff being hit by a golf club that was being handled by a customer on the premises without knowledge of the operation going on. Three hundred and eighty-five dollars was demanded for medical expenses and $10,000 for damages.

A demurrer was overruled, followed by answer of the Champlin Hardware Company admitting having the practice device, but denying negligence in its maintenance and denying a failure to use precaution against injuries to customers coming in the store, and by way of defense in the same paragraph it averred that two parties had come into the store without its knowledge, and on their own initiative took the device from the place where it was kept and set it on the floor, with the following allegation:

"* * * and as the plaintiff approached he did so without exercising any care or caution and negligently walked up to one of the men who had taken the device out of its place, when it was plain to be seen that the man using the device did not see the plaintiff, but had his back to said plaintiff and plaintiff had his face toward said man using the device and none of the agents or servants of this defendant were near so that the conduct of the man taking said device from its usual place could be seen, though the same could have been and should have been seen by the plaintiff who negligently approached the man with the golf club in his hand, and at a time when he was in the attitude of swinging the same.

"That this defendant denies that it is liable in any amount whatsoever for any act or conduct of the man who came in the store and obtained said device without the knowledge or consent of this defendant or its agents, servants or employees, and that said plaintiff is guilty of negligence which caused his own injury.

"Wherefore this defendant prays that plaintiff take nothing by reason of his petition herein filed and defendant have judgment for its costs."

A reply by way of general denial was had, and especially a denial of any negligence, or having seen the device, or having any information that the golf trap was being used by any person in the defendant's place, and denying any knowledge of approaching the man with a golf club in his hands, and of any knowledge that the man

was in the attitude of swinging the club, with a prayer for judgment.

There is very little conflict in the evidence in the case. According to the record, the plaintiff in error, being engaged in a general hardware business for the purpose of promoting its trade, put an advertisement in the paper of the golf trap and a general invitation to use it. By virtue of being in the retail business and keeping its store open for business, it invited people desiring to buy its wares to come in and buy. It also invited people interested in golf to come in and try the machine, apparently for the purpose of deriving a profit for itself by virtue both from its sale of its hardware generally, and also of its golf equipment.

The advertisement was inserted in the newspaper by the Champlin Hardware Company under date of March 4, 1928, as follows:

"A new wrinkle in golf, Golfette. Come in and try your driving ability. Golfette will tell you how."

An offer was made to prove a similar advertisement in another newspaper in Enid on March 5, 1928, which was ruled out because it had not been published at the time of the accident.

The details of the injury were established, and it appeared that the plaintiff's jaw was broken by the blow from the golf club that was being used by a practitioner and prospective customer who had been attracted, apparently, by this advertisement. A picture of the location and appearance of this golf trap appears in evidence, and two different exhibits from which it appears that it rested on the floor with an attachment of some kind to hold the ball after it had been struck by the one engaged in the practice act. It carried a register that would show the operator just how to improve himself in hitting to the right or to the left or straight ahead, technically "hooking" or "slicing" according to this record. Its location in the store is shown by itself and also with four men standing in a northeast and southwest line, one evidently intended to represent the position of the defendant in error, close to the hoes, and one taking a club head measurement, the ball being in the line of sight by a view through his legs, which are held somewhat apart, but not a standard stance, all preparatory to a hard swing with driving power.

There is a carton that evidently figured in the evidence, with some football paraphernalia that was gotten to enable the store to sell such to the students in the schools. The clerk testified that he had been engaged in practice with the golf apparatus, but at the time of the accident was in company with a prospective customer examining the football samples, and looked up and saw the injured man. A 40-inch club had been used. The clerk was examined with reference to the first picture and also the second one. The table with the damaged goods appears in both pictures, though the arrangement of the slop buckets is a little different at the bottom of the table. The clerk was cross-examined, and it developed that if a customer wanted to look at rakes or hoes or things at that time before be bought them, he would have to go to the rack on the east wall, near where the golf trap was, which had been displayed and used from time to time for some two or three weeks. There were no guards or signs or warnings to warn persons, who happened to be going through the space of golf practice, that it was going on.

Apparently, allowing for the difference in perspective, this golf practice was going on at a place where customers would naturally come to inspect the goods they were seeking to buy, and offered for sale by the plaintiff in error. As to the proximate cause of the injury, nobody could doubt that the man was hit on the jaw by a competitive practice swing of one, who was engaged in trying to improve his golf propelling power, resulting in injuries that would warrant the amount of the verdict in the case, if the plaintiff in error is responsible. The evidence is clear that the plaintiff below an invitee, whether we figure him as a golf practitioner, or as merely looking for a hoe.

Several instructions were asked for by the defendant below, each of which appears to have been refused in the exact language offered. Among others was a peremptory and an intervening cause instruction, and one on contributory negligence based on knowledge and appreciation of anticipated injury, somewhat abstract as to application. No. 5 concerns the duty of the plaintiff to exercise ordinary care to avoid injury. No. 6 was about the same, with an addition that the verdict should be for the defendant in case of failure of the plaintiff to exercise care. No. 7 deals with discovered peril and negligence under it. No. 8 concerned the necessity of establishing that the defendant was negligent in regard to the instrumentalities with which the alleged injury occurred. No. 9 was about to the same

effect and that no want of care on his part "constituted" to the accident, evidently a stenographer's mistake. No. 10 is upon the proposition of discovered peril and failure to avoid danger. No. 11 concerns failure to avoid the discovered peril and exposure to danger. No. 12 was a comparison between the duty of the person creating the situation and the other confronted with the situation of danger. No. 13 is based on the club handler's being guilty of negligence, and inability of plaintiff to recover even though the defendant was negligent. No. 13½ is as follows:

"You are further instructed that those who use premises to transact business thereon with the public, invite the public to come in and deal with them, and hence owe to those accepting the invitation the duty of using ordinary care to make reasonably safe for their use the place or places assigned to such use; but this duty does not extend to parts of the establishment to which the public is not invited.

"Requested by the defendant, refused and excepted to by the defendant. Charles Swindall, Judge."

No. 14, asked for, is as follows:

"The jury is instructed that to enable plaintiff to recover, you must believe from a preponderance of the evidence, that the negligence of the defendant was the proximate cause of the injury. The proximate cause of the injury is that which in the natural and continuous sequence, unbroken by any new independent cause, produces that injury and without which the injury would not have occurred, and if you believe from the evidence that the negligence, if any, of defendant did nothing more than to furnish a condition by which the injury is made possible, and that condition caused injury by subsequent independent act of a third person, the creating of the condition is not the proximate cause of the injury.

"Requested by the defendant, refused and excepted to by the defendant. Charles Swindall, Judge."

The court gave instructions applicable to the evidence fairly defining the issues as outlined in the pleadings, largely in the words of the pleadings, and, after doing so, instructed the jury that it was plaintiff's duty to prove the material allegations of the petition by a preponderance of the evidence. If he failed to do so it would be the jury's duty to find against him on the unproved issue. Same way with reference to the duty of the defendant as to the new matter in the answer. Preponderance of the evidence was defined in instruction No. 3, and instruction No. 4 defined negligence as a want of ordinary care, and ordinary care was defined as such care as men of ordinary prudence usually exercise under the same or similar circumstances. The fifth instruction was on the subject of contributory negligence. The sixth instruction told the jury if the plaintiff was guilty of contributory negligence he could not recover. The seventh instruction was upon the question of what constituted the elements to make negligence. The eighth defined proximate cause. The ninth instructed the jury that the fact of the accident did not entitle the plaintiff to recover or show negligence, but that the plaintiff must establish by a preponderance of the evidence "every material allegation of the petition and that his injuries, if any, were caused by the defendant's negligence, as alleged in plaintiff's petition, and as the direct and proximate result thereof." The tenth instruction was cautionary as to the amount of recovery being only what would compensate. The eleventh instruction is as follows:

"You are further instructed that in order to return a verdict in favor of the plaintiff, said plaintiff must have established the allegations as to the defendant's fault in causing the alleged accident complained of, by a preponderance of the evidence, and your verdict must be based upon the evidence in this case, and cannot be based upon conjecture and mere speculation as to who was at fault.

"Given and excepted to by the defendant, Charles Swindall, Judge."

The twelfth instruction is as follows:

"You are further instructed that the owner or occupant in charge of property owes a duty to an invitee to the exercise of reasonable and ordinary care for his safety, and such owner or occupant is liable for injury resulting to another from a breach of his legal duty; and in this connection, you are instructed that it was the duty of the defendant, Champlin Hardware Company, to use reasonable and ordinary care to protect the plaintiff, George Clevinger, from any injury while he was in the building occupied by the defendant on business in said building, and to use ordinary care and prudence to protect the said plaintiff from injury, and it was the duty of said defendant to use reasonable and ordinary care and prudence to keep the aisles and passageways of the premises, in and through which persons were accustomed to pass, in a reasonably safe condition so as not unnecessarily to expose plaintiff to danger or accident.

"Given and excepted to by the defendant. Charles Swindall, Judge."

The thirteenth instruction is as follows:

"You are further instructed that it is im-

material in this case as to whether the employees of the Champlin Hardware Company, or any of the four persons using the golfette, referred to in the pleadings as golf trap, placed the same on the floor, if you find from a preponderance of the evidence that one of the employees of the defendant company was present and consented to the use of said golfette, or golf trap; and you are further instructed that if none of the employees of the Champlin Hardware Company objected to the use of said trap, or golfette, and instead thereof engaged with those using the trap in the use of it, then you are instructed that responsibility for the placing of the trap, and the use would be upon the defendant in this case, and if you find from the evidence that Art Trainer, Hudson Ruff, Earl Lile, and Charles Haugherty, were using said trap in common, and that Nick Urban, the agent and servant of the defendant, was in their presence, and in their company, and also using said trap, then it is for you to determine from all the facts and circumstances in evidence in the case whether or not said golfette in the manner that the same was permitted to be placed in said store and to be operated, was such as to constitute negligence on the part of the defendant, as negligence is defined in these instructions; and if you further find from the preponderance of the evidence that there were no barriers, fences, ropes or other arrangements made to protect persons from injury through the use of said golfette, or golf trap, then you will determine whether or not the acts and conduct of said defendant in permitting said golfette or golf trap to be so located and used amounted to want of ordinary care, that is, such care as men of ordinary prudence and caution usually exercise under the same or similar conditions; and if you find from a preponderance of the evidence that in so using said golfette and permitting the same to be used on the premises of said defendant, that the defendant failed to use ordinary care, that is, such care as men of ordinary prudence usually exercise under the same or similar conditions, and that as the direct and proximate result of the acts and conduct of said defendant in permitting said golfette to be so placed or used, the plaintiff sustained an injury, and you further find that the said plaintiff did not contribute to said injury in some degree directly causing said injury, as contributory negligence is defined in these instructions, then and under such circumstances it will be your duty to find for the plaintiff and to assess his damages at such sum as will fairly and reasonably compensate said plaintiff for the loss he has sustained by reason of said injuries.

"Given and excepted to by the defendant. Charles Swindall, Judge."

The fourteenth instruction was definitive of the amount of damages. The fifteenth was as to the number of participants the verdict must have. The sixteenth was as to the jury being the exclusive judges of the evidence, etc.

The jury returned verdict for $4,000, which was unanimous, followed by motion for new trial and assignments of error, complaining of overruling the motion for new trial, and of giving instructions Nos. 4, 6, 8, 9, 10, 11, 12, and 13, and of refusal to give instruction 13½ asked for, and in admitting evidence offered on the part of the defendant.

Complaint is made of the refusal to give instruction No. 13½, quoted above, and complaint is made of giving instruction No. 12 instead, and the argument is made that the instruction overlooked entirely the defendant's contention that the injury occurred at a part of the store to which the public was not invited. However, the evidence in this case, it seems to us, is conclusive upon the proposition that the plaintiff below was where he had a right to be as a prospective customer. It is further convincing that for the purpose of gaining a profit the invitation had been extended to the devotees of golf to come in and improve their golfing with a view of securing more sales.

There is nothing that developed in the evidence that would make out of the plaintiff a licensee, as we ordinarily know it, or a trespasser. The rule laid down as to the duty of the man who exposes his goods for sale and invites his customers is fairly well stated from the standpoint of the storekeeper in these instructions. In fact, if there is any variation or turning, when one figures the doctrine of proximate cause and contributory negligence, and the requirements made of the plaintiff below, they were more favorable to the defendant than strictly it could ask for. But it does not appear that the jury were misled in any measure by the instructions the court gave, when this evidence is analyzed.

The evidence shows conclusively that everybody was invited to indulge in the golf contest, and that the golf machine was in the open space that any one seeking to buy other merchandise was allowed to use. We think that the evidence showed in this case that not only the plaintiff had a right to inspect the hoes, but without objection on the part of the defendant in error, all other persons having occasions to visit the store were permitted to go where the golf practice was, without warning, and that they were not only permitted, but urged by the adver-

tisement so to do. Its language was "Come in and improve your driving ability."

Another complaint is that the court did not instruct on the subject of an intervening cause by some third person. As applied to the present case, there could be no doubt about the proximate cause of the injury being a blow from the club, allowed to be used in a dangerous way without warning to another customer.

Some complaint is made of instruction No. 13, but we do not think that the jury could have drawn the idea therefrom that the court was telling them the defendant was liable in the present case.

Several authorities have been cited, but we think that none of them are applicable in their entirety to this case. The law applicable here is well stated in Cooley on Torts (3rd Ed.) at page 1258, under the head of "Nuisances," and the notations thereunder. The section is as follows:

"Inviting One into Dangerous Places. It has been stated on a preceding page that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. Many cases illustrate this rule. Thus, individuals holding a fair and erecting structures for the purpose are liable for injuries to their patrons caused by the breaking down of these structures through such defects in construction as the exercise of proper care would have avoided. And, generally, where a person invites the public to a place or grounds for a fair or public exhibition of any kind, he is bound to use due care to protect those who come from injury, not only from defects in the premises but also from other dangers arising from the use of the premises by himself or his licensees."

And section 634 is as follows:

"Implied Licenses. Every retail dealer impliedly invites the public to enter his shop for the examination of his goods. that they may purchase them if they see fit; the mechanic extends the like invitation to those who may have occasion to become his customers; the physician and the lawyer invite them to their respective offices, and so on."

Extracts from this statement of the law are quoted with approval by the Supreme Court of the United States in the case of Bennett v. Louisville & Nashville Railroad Co., 102 U. S. 577, 26 L. Ed. 235.

We find no error in the judgment in this case, and it is accordingly affirmed

RILEY, HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. SWINDALL, J., disqualified. LESTER, C. J., and CLARK, V. C. J., absent.