The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 14, 2025

**NO. S-1-SC-39172**

**JASON ARAGON,**

Petitioner,

v.

**RICHARD MARTINEZ, Warden,**

Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Courtney B. Weaks, District Judge**

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Petitioner Jason Aragon

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Respondent Richard Martinez, Warden

**CONSOLIDATED WITH**

**NO. S-1-SC-40112**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**RONALD J. LUSK,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Cindy Leos, District Judge

Raúl Torrez, Attorney General
Jonathan D. Gardner, Assistant Attorney General
Van Snow, Acting Solicitor General
Santa Fe, NM

for Petitioner State of New Mexico

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Respondent Ronald J. Lusk

**OPINION**

**VIGIL, Justice.**

{1}    Sex offenders face long and indeterminate supervised parole requirements, ranging from five to twenty years for certain sex offenses and five years to life for more serious sex offenses. NMSA 1978, § 31-21-10.1(A) (2007). To determine the actual duration of supervised parole, the New Mexico Parole Board (Parole Board) is required to conduct a parole duration review hearing (duration review hearing) at specified intervals, in which the attorney general has the burden of proving by clear and convincing evidence that the sex offender should remain on parole. Section 31-21-10.1(C). The initial duration review hearing must be held after the sex offender has served the initial five years of supervised parole and, if continued, at two-and-one-half-year intervals after that. *Id.* However, the mandatory statute lacks a remedy if the Parole Board either neglects to hold these review hearings on time or fails to conduct them altogether. We have consolidated these habeas corpus cases to answer the question of what remedy is appropriate in these circumstances.

{2}    We conclude that the failure to hold a timely duration review hearing is not jurisdictional, entitling a sexual offender to immediate release from parole. Instead, like the Court of Appeals held for untimely mandatory probation duration review hearings in *State v. Cooley*, 2023-NMCA-089, 538 P.3d 491, we hold that the

remedy is found in due process. After considering any evidence presented and weighing the due process factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), a district court may issue a writ of habeas corpus and order the release of a sexual offender parolee or grant other appropriate relief. In the cases before the Court, we hold under *Mathews* that the parolees' untimely duration review hearings violated their right to procedural due process, and we remand to the district courts for evidentiary hearings regarding prejudice to determine whether habeas corpus or other relief is appropriate.

## I. BACKGROUND

### A. Jason Aragon

{3} In March 2009, Jason Aragon entered a plea of no contest to criminal sexual contact of a child under thirteen, a second-degree felony. NMSA 1978, § 30-9-13(B)(1) (2004). Aragon was sentenced to fifteen years imprisonment in the custody of the New Mexico Corrections Department (NMCD) with twelve years suspended, for a term of three years imprisonment. Upon his release, Aragon was ordered to be placed on an indeterminate parole period of not less than five years or more than twenty years.

{4} Aragon completed his prison sentence and commenced serving parole on June 29, 2010. However, he remained incarcerated on in-house parole until he was

2

released into the community on August 18, 2010. *See State v. Thompson*, 2022-NMSC-023, ¶ 5, 521 P.3d 64 ("In-house parole is commonly known as the time period where an inmate has completed his basic sentence but is still incarcerated and in the custody of the Corrections Department." (brackets, internal quotation marks, and citation omitted)). Aragon was subsequently returned twice to the NMCD for separate probation violations, and he has remained continuously incarcerated on in-house parole since August 17, 2011.

{5} On January 13, 2020, the New Mexico Law Office of the Public Defender filed an Amended Petition for a Writ of Habeas Corpus on Aragon's behalf. Aragon asserted he was entitled to habeas relief because he was not afforded a duration review hearing five years after he started serving parole and every two and one-half years thereafter, as required by Section 31-21-10.1(C). The petition alleged that as of the time of its filing, Aragon had served nine years, six months, and twenty-five days without any duration review hearing whatsoever. Aragon requested a writ of habeas corpus ordering his immediate release from NMCD custody and a discharge from parole. In the alternative, Aragon requested that the NMCD be ordered to immediately provide him with a duration review hearing. Aragon subsequently filed a supplement to the amended petition, withdrawing his request for parole hearings, stating the "sole request for relief is immediate discharge from the custody of the

3

Parole Board." In response, the Parole Board contended that Aragon was not entitled to any relief, arguing that he was entitled to a duration review hearing only after serving a total of five years of parole in the community (as opposed to parole in-house).

{6} On November 30, 2021, nearly eleven and one-half years after Aragon commenced serving parole, the district court ordered the NMCD to grant Aragon an immediate duration review hearing. Rejecting the Parole Board's argument, the district court reasoned that the "initial five years of supervised parole" that triggers the initial duration review hearing required by Section 31-21-10.1(C) refers to *all* parole served, whether in-house or in the community. The district court denied Aragon's request for an immediate release and discharge because it was "not willing to go so far as to rule that [NMCD] has waived their right to continue to detain [Aragon] by not having a review hearing."

{7} The State appealed, challenging whether "parole" under Section 31-21-10.1(C) included in-house parole, the issue which was then pending in *Thompson*, 2022-NMSC-023. We, therefore, held this case in abeyance pending our decision in *Thompson.* After *Thompson* was decided, holding that "parole" under Section 31-21-10.1(C) includes in-house parole, 2022-NMSC-023, ¶ 30, we vacated the abeyance and ordered Aragon's case placed on the general calendar.

{8}     The parties agree that the Parole Board granted Aragon a belated duration review hearing, as ordered by the district court. Nevertheless, Aragon appeals, asserting he is entitled to a complete discharge from parole for multiple reasons. He first argues the Parole Board lost jurisdiction by not holding a duration review hearing as required by Section 31-21-10.1(C). He second argues that the failure to hold a timely duration review hearing as required by Section 31-21-10.1(C) violated due process. And third, he argues Section 31-21-10.1(C) is unconstitutional because (1) it permits the executive branch—the NMCD—to exercise judicial powers, in violation of the separation of powers doctrine; (2) it is unconstitutionally vague; (3) it increases the penalty for a sex offense without a jury making the necessary finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (4) it violates the prohibition against double jeopardy.

**B.     Ronald Lusk**

{9}     In June 2010, Ronald Lusk entered a plea of no contest to sexual exploitation of children (manufacturing), a second-degree felony. NMSA 1978, § 30-6A-3(D) (2007). Lusk was sentenced to nine years imprisonment, with six years suspended, together with a one-year habitual offender enhancement for a total period of four years incarceration. In addition, Lusk was ordered to be placed on an indeterminate

period of parole of not less than five years or more than twenty years upon his release.

{10} Lusk completed his prison sentence and started serving parole on May 23, 2011. However, Lusk remained incarcerated, serving in-house parole for three years and four months, until October 11, 2014, when he was accepted into La Pasada Halfway House, a condition of his parole plan. Lusk's parole was revoked based on an allegation that he possessed drugs at the halfway house, and he has been in the custody of the NMCD since January 30, 2015.

{11} On July 25, 2022, the New Mexico Law Office of the Public Defender filed an Amended Petition for a Writ of Habeas Corpus on his behalf, alleging that Section 31-21-10.1(C) was violated, which entitled him to an order of immediate discharge from parole or an order to compel the Parole Board to immediately hold a duration review hearing. *Thompson* having been decided, *see* 2022-NMSC-023, the Parole Board conceded in its response that Section 31-21-10.1(C) was violated but argued that because Lusk failed to demonstrate prejudice from the failure to hold a timely hearing, his relief was limited to the Parole Board holding a duration review hearing.

{12} On January 27, 2023, eleven years and eight months after Lusk completed his prison sentence, the district court ordered the Parole Board to "without delay, and no later than 60 days after the filing of this order" afford Lusk the parole duration

6

review hearing mandated by Section 31-21-10.1(C), while expressly reserving making a final decision on the habeas petition. The Parole Board held the duration review hearing on March 20, 2023, and continued Lusk's indeterminate parole by two and one-half years. Subsequently, on July 17, 2023, twelve years and one month after Lusk completed serving his prison sentence, the district court entered its order discharging Lusk from parole and ordered his immediate release from the custody of NMCD. In doing so, the district court concluded that the failure to hold duration review hearings as required by Section 31-21-10.1(C) resulted in his unconstitutional detention in custody.

{13}    The State appealed, arguing that because Lusk failed to prove prejudice resulting from the delayed hearing, there was no violation of due process, and his relief was limited to receiving a duration review hearing.

{14}    We consolidated the appeals in Lusk's and Aragon's cases.

**II.    ANALYSIS**

{15}    Statutory interpretation and due process are issues of law that this Court reviews de novo. *Nguyen v. Bui*, 2023-NMSC-020, ¶ 14, 536 P.3d 482 (stating that the Court reviews questions of statutory interpretation de novo); *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 31, 137 N.M. 161, 108 P.3d 1019 (stating that appellate courts review due process questions de novo).

7

**A.** **The Remedy for Failing to Hold a Timely Hearing Is Not Automatic Discharge from Parole**

{16}    Section 31-21-10.1 was enacted during the 2003 Special Session and took effect on February 3, 2004. 2003 N.M. Laws, 1st Spec. Sess., ch.1, § 9. The statute was subsequently amended in 2007, with an effective date of July 1, 2007. 2007 N.M. Laws, ch. 69, §§ 4, 9. A preliminary matter we must address is which version of the statute applies and whether it makes a difference to our analysis. "We have held that the law, at the time of the commission of the offense, is controlling." *State v. Lucero*, 2007-NMSC-041, ¶ 14, 142 N.M. 102, 163 P.3d 489 (internal quotation marks and citation omitted); *see also State v. Ordunez*, 2012-NMSC-024, ¶¶ 16-19, 283 P.3d 282 (holding that the retroactive application of a statute diminishing credit on a sentence violates the state and federal constitutional prohibitions against ex post facto laws). Aragon was convicted of committing criminal sexual contact of a minor "between the 6th day of June, 2007, and the 7th day of June, 2007." Thus, the 2004 version applies to Aragon, as the 2007 amendments were not yet in effect. Lusk, on the other hand, was convicted of sexual exploitation of children (manufacturing) "between December 21, 2007 and July, 2008." Lusk, therefore, is subject to the amended 2007 version.

{17}    The remaining preliminary question we answer is whether any differences in the two statutes affect the analysis of the issue before us in this case. We conclude

they do not. Both versions command that the Parole Board reviews whether parole should continue after the initial five years of supervised parole and every two and one-half years thereafter. *Compare* § 31-21-10.1(B) (2004) ("When a sex offender has served the initial five years of supervised parole," the Parole Board "shall . . . review the duration of the sex offender's supervised parole," and at "two and one-half year intervals."), *with* § 31-21-10.1(C) (2007) ("When a sex offender has served the initial five years of supervised parole," the Parole Board "shall review the duration of the sex offender's supervised parole," and at "two and one-half year intervals thereafter."). Both versions also impose the burden of proving, "at each review hearing," that the offender should remain on parole, although under differing standards. Under the 2004 version, the state has the burden of proof "to a reasonable certainty," § 31-21-10.1(B) (2004), and under the 2007 version, the attorney general has the burden of proof "by clear and convincing evidence," § 31-21-10.1(C) (2007). Both versions also expressly provide what happens if "the state is unable to prove that the sex offender should remain on parole." *See* § 31-21-10.1(A) (2004); § 31-21-10.1(A) (2007). The consequence is that the period of supervised parole "may be for a period of less than" the maximum—twenty years under the 2004 version and extended to natural life for more serious offenses under the 2007 version. Section 31-21-10.1(A) (2004); *see* § 31-21-10.1(A)(2) (2007). Most important, neither

version sets forth any remedy for the failure of the Parole Board to hold a duration review hearing when the initial five-year period of supervised parole has been served. *See generally* § 31-21-10.1 (2004); § 31-21-10.1(2007). The differences between the two versions do not affect our analysis. For ease of reference, we will refer to the current version moving forward: Section 31-21-10.1 (2007).

{18} We now address whether the remedy under Section 31-21-10.1(C) for failing to provide a timely initial duration review hearing is automatic discharge from parole. The statute directs:

> When a sex offender has served the initial five years of supervised parole, and at two and one-half year intervals thereafter, the [Parole B]oard *shall* review the duration of the sex offender's supervised parole. At each review hearing, the attorney general shall bear the burden of proving by clear and convincing evidence that the sex offender should remain on parole.

(Emphasis added). The statute is clear and unequivocal: the Parole Board "shall" conduct a hearing after a sex offender parolee has served "the initial five years of supervised parole." *Id.* The statute does not allow any discretion, nor does it allow any basis for extending the time for holding the hearing. "The word shall is ordinarily the language of command. And when a law uses shall, the normal inference is that it is used in its usual sense—that being mandatory." *Autovest, L.L.C. v. Agosto*, 2025-NMSC-001, ¶ 21, 563 P.3d 811 (internal quotation marks and citation omitted). In other words, the statute is mandatory and imposes a duty and obligation

10

on the Parole Board to conduct a duration review hearing no later than five years after the initiation of supervised parole.

{19} The Legislature has mandated that the Probation and Parole Act, NMSA 1978, §§ 31-21-3 to -19 (1955, as amended through 2025), "shall be liberally construed to the end that the treatment of persons convicted of crime shall take into consideration their individual characteristics, circumstances, needs and potentialities as revealed by case study," and that such persons shall be "under parole supervision when a period of institutional treatment is deemed essential in the light of the needs of public safety and their own welfare." Section 31-21-4 (setting forth the construction and purpose of the Probation and Parole Act). In other words, tailored conditions of parole are contemplated to facilitate the rehabilitation of sex offenders and their reintegration into the community. To accomplish these ends, an indeterminate period of parole (five to twenty years or five years to life, depending on the severity of the sexual offense) is imposed. Section 31-21-10.1(A). During the entire time, the sex offender is under the supervision of the Parole Board and subject to its orders and any conditions it imposes. *See* § 31-21-5(B) (defining parole); *see also* § 31-21-10(E) (providing that a parolee "shall be subject to the orders of the board"). Release into the community is subject to conditions approved by the Parole Board for each sex offender, together with a parole plan submitted by each sex offender that is

11

approved by the Parole Board. Section 31-21-10.1(D); *see also* § 31-21-10(E) (requiring a parole plan as "a prerequisite to release"). Section 31-21-10.1(C), in turn, establishes a system for regularly monitoring sex offenders on indeterminate parole to determine whether they should remain on parole beyond their initial five years. If the attorney general is unable to prove that the offender should remain on parole, the period of supervised parole is terminated and the offender is released. Section 31-21-10.1(A), (C).

{20} As we explained in *McCutcheon v. Cox*, New Mexico, like other states, uses indeterminate parole to allow parole authorities to adjust the length of incarceration based on a prisoner's progress toward rehabilitation, ensuring that the punishment "fit[s] the offender rather than the crime." 1962-NMSC-175, ¶ 12, 71 N.M. 274, 377 P.2d 683. Thus, interpreting duration review hearing deadlines as mandatory fulfills the carefully crafted legislative goals of ensuring that sex offenders receive appropriate treatment and services, setting conditions under which continued indeterminate parole is justified, and terminating parole before the indeterminate period expires when justified, all the while taking into account the needs of public safety. To satisfy these goals, the Legislature requires the Parole Board to conduct a duration review hearing after the sex offender has served the initial five years of supervised parole and every two and one-half years thereafter. Therefore, construing

12

the statutory deadline as mandatory is consistent with and effectuates the Legislature's intent. *See Tomlinson v. State*, 1982-NMSC-074, ¶ 9, 98 N.M. 213, 647 P.2d 415 (stating we give "shall" its mandatory meaning "unless there are indications in the statute that the mandatory reading is repugnant to the manifest intent of the Legislature").

{21} Aragon contends that the Parole Board's jurisdiction expired when it failed to conduct a timely duration review hearing as required by Section 31-21-10.1(C). He, therefore, contends he is entitled to an immediate discharge from parole. If a mandatory statutory time requirement is jurisdictional, outright dismissal is appropriate. *See Cooley*, 2023-NMCA-089, ¶¶ 27-29 (noting that dismissal from probation is required if the statute mandating the district court to hold a timely probation duration review hearing is jurisdictional); *N.M. Dep't of Health v. Compton*, 2000-NMCA-078, ¶ 12, 129 N.M. 474, 10 P.3d 153 (noting that when a mandatory statutory deadline is violated "outright dismissal is the proper remedy" if the deadline is jurisdictional). A mandatory statutory deadline is jurisdictional when it is essential to the proper operation of the statute. *Compton*, 2000-NMCA-078, ¶ 13. In other words, if a timely duration review hearing under Section 31-21-10.1(C) is essential for the Parole Board to continue supervising the sex offender on supervised parole, then it is jurisdictional. *See Cooley*, 2023-NMCA-089, ¶ 27

13

(noting that failure to comply with a mandatory statutory requirement for a probation duration review hearing will deprive a district court of jurisdiction when the requirements are "essential to the proper operation of the statute" (internal quotation marks and citation omitted)). To make this determination, we look to the legislative intent, consider all of the terms of the statute, the general objects to be accomplished by the statute, and the consequences that would result in construing it as jurisdictional, one way or the other. "[T]he prime consideration of all courts in the construction of statutes involves the determination of the will of the Legislature as expressed therein. Thereupon it becomes the duty of the court to give effect to the expressed will of the Legislature." *Plomteaux v. Solano*, 1918-NMSC-104, ¶ 13, 25 N.M. 24, 176 P. 77.

{22} For the following reasons, we conclude the deadlines in Section 31-21-10.1(C) are not jurisdictional. Most importantly, Section 31-21-10.1(C) does not provide that parole ends if the hearing is not timely, nor does it provide any other consequence or penalty for non-compliance. In fact, there is nothing in the statute that prohibits the Parole Board from holding a duration review hearing after the prescribed deadline. Furthermore, the Probation and Parole Act contemplates that a sex offender parolee who does not receive a timely duration review hearing is still subject to the supervision and orders of the Parole Board. The Parole Board retains

14

jurisdiction over a sex offender until they have "performed the obligations of the person's release for the period of parole provided," at which time "the board shall make a final order of discharge and issue the person a certificate of discharge." Section 31-21-10(F). Finally, interpreting Section 31-21-10.1 to automatically strip the Parole Board of jurisdiction for a missed deadline undermines the Probation and Parole Act's goal of a parole process facilitating the rehabilitation and reintegration of sex offenders under conditions tailored to each sex offender, with public safety weighing in the balance. "We will not construe a statute to defeat its intended purpose." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 21, 309 P.3d 1047 (brackets, internal quotation marks, and citation omitted). Therefore, we conclude that Section 31-21-10.1(C)'s deadlines are not jurisdictional. As a result, the Parole Board's failure to hold timely duration review hearings did not strip it of jurisdiction.

{23} Our focus now shifts to the appropriate remedy. As established, Section 31-21-10.1(C) mandates that the Parole Board conduct duration review hearings within specific statutory timelines, and the Parole Board failed to meet them. The critical question, then, is the appropriate remedy for the statutory violation. We turn to a due process analysis for the answer.

**B.    The Due Process Analysis**

{24}    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[1] Similarly, the New Mexico Constitution declares, "No person shall be deprived of life, liberty or property without due process of law." N.M. Const. art. II, § 18. Because there is no argument that the New Mexico constitutional provision provides greater protection than the United States Constitution, we assume the protection under both is the same. *See State v. Meadors*, 1995-NMSC-073, ¶ 4 n.1, 121 N.M. 38, 908 P.2d 731.

{25}    "Due process involves both substantive and procedural considerations." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 26, 122 N.M. 524, 928 P.2d 250. "Substantive due process protects individuals from arbitrary and discriminatory laws, requiring that every law further a proper legislative purpose." *Id*. Procedural due process requires that the government provide notice and an opportunity to be

---

[1]The term "state" typically refers to state or local governments, along with their agencies and officials acting under the authority of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ("Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"). In this appeal, the Parole Board acts as the state under New Mexico law. NMSA 1978, § 31-21-25 (2001) (enumerating the powers and duties of the Parole Board).

heard in a timely and meaningful manner before depriving an individual of liberty or property. *See Mathews*, 424 U.S. at 333; *see also, e.g.*, *Rutherford v. City of Albuquerque*, 1992-NMSC-027, ¶ 7, 113 N.M. 573, 829 P.2d 652. This consolidated case implicates procedural due process.

{26} "A procedural due process inquiry is a two-step analysis." *State v. Houidobre*, 2025-NMSC-007, ¶ 8, 563 P.3d 890. "First, we determine whether the individual has been deprived of a constitutionally significant interest." *Id.*; *see Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 51, 306 P.3d 457 ("We have said numerous times that the threshold question in evaluating a due process challenge is whether there is a deprivation of liberty or property." (brackets, internal quotation marks, and citation omitted)); *Barreras v. N.M. Corrs. Dep't*, 1992-NMSC-059, ¶ 18, 114 N.M. 366, 838 P.2d 983 ("[T]o assert a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish deprivation of a legitimate liberty or property interest."). "Then, if there is a deprivation, we determine whether the [State]'s procedures [at issue] comport with due process." *Houidobre*, 2025-NMSC-007, ¶ 8.

{27} We begin with a brief overview of parole and the nature and scope of the liberty interest at stake. Next, after concluding that Section 31-21-10.1(C) establishes a liberty interest in a prompt duration review hearing, we clarify how the Parole Board's delay in holding these hearings deprived Aragon and Lusk of this

liberty interest. Then, we conclude with the analysis the district courts must follow on remand in fashioning a remedy for the failure of the Parole Board to provide a timely duration review hearing in these cases.

**1.     Aragon and Lusk were deprived of a constitutionally significant liberty interest**

{28}     Parole is a mandatory component of a sex offender's criminal sentence following incarceration, during which the sex offender parolee is under the Parole Board's supervision and is required to comply with conditions and restrictions set by the Parole Board. Section 31-21-5(B) (defining parole); § 31-21-10(E) (describing parole authority and procedure); *see Thompson*, 2022-NMSC-023, ¶ 25 (noting that the Legislature has "required sex offenders to serve not less than five years of supervised parole" (internal quotation marks and citation omitted)). Given the diminished liberty interest at stake, the State may constitutionally deprive sex offender parolees of their conditional liberty with less process than is owed to law-abiding citizens. *See Morrissey v. Brewer*, 408 U.S. 471, 484-90 (1972) (describing the minimum procedural requirements owed to parolees in parole revocation proceedings). Nevertheless, they are entitled to some due process.

{29}     A liberty interest protected by the Due Process Clause of the Fourteenth Amendment may arise from two sources: (1) the Due Process Clause itself or (2) the laws of New Mexico. *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 18, 136 N.M. 217,

18

96 P.3d 778. Here, our focus is on the laws of New Mexico and, specifically, whether the text of Section 31-21-10.1(C) establishes a constitutionally significant liberty interest.

{30} At the heart of our analysis is defining the nature and scope of the liberty interest created by Section 31-21-10.1(C). A protected liberty interest is created when the Legislature places substantive limits on official discretion within a statute. *Houidobre*, 2025-NMSC-007, ¶ 9; *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show that particularized standards or criteria guide the State's decisionmakers." (internal quotation marks and citation omitted)); *see also, e.g.*, *Garcia v. Las Vegas Med. Ctr.*, 1991-NMCA-053, ¶ 13, 112 N.M. 441, 816 P.2d 510 (stating that the "federal constitutional right to procedural due process may . . . be determined by reference to state law . . . [b]ecause state-created liberty interests are entitled to the protection of the federal Due Process Clause" (internal quotation marks and citation omitted)). For Section 31-21-10.1(C) to be the source of a protected due process interest, it must require particularized standards or objective criteria for the Parole Board to follow. *See Olim*, 461 U.S. at 249 ("If the decisionmaker is not required to base its decisions on objective and defined criteria, but instead can deny the requested relief for any constitutionally permissible reason

or for no reason at all, the State has not created a constitutionally protected liberty interest." (internal quotation marks and citations omitted)). If Section 31-21-10.1(C) does not mandate the Parole Board to use particularized standards or objective criteria, allowing it to deny relief based on any constitutionally valid reason—or even none at all—then the Legislature did not establish a constitutionally protected liberty interest. *See Olim*, 461 U.S. at 249.

{31} The duration review hearing process outlined in Section 31-21-10.1(C) requires regular and consistent evaluations of the duration and conditions of parole for sex offenders at clearly defined intervals. This is an objective requirement, leaving no room for discretionary deviation. During the specified statutory timeframes, the Parole Board must either continue the sex offender's parole or completely discharge them from parole, thus restoring their full freedom. Section 31-21-10.1(A) (providing for the reduction of the period of supervised parole "if, at a review hearing provided for in [Section 31-21-10.1(C)], the state is unable to prove that the sex offender should remain on parole"); § 31-21-10(F) ("When a person on parole has performed the obligations of the person's release for the period of parole . . . , the [Parole B]oard shall make a final order of discharge and issue the person a certificate of discharge."). Because Section 31-21-10.1(C) mandates that a sex offender be provided an opportunity to regain their full freedom through release

20

from parole, Section 31-21-10.1(C) establishes a liberty interest in receiving a timely duration review hearing. Therefore, procedural due process ensures that sex offender parolees have a meaningful opportunity to contest the need for their continued parole, once they have served their initial five-year period of parole.

{32} The Parole Board's delay in conducting Aragon's and Lusk's duration review hearings infringed on this protected liberty interest. Section 31-21-10.1(C) establishes a clear procedural framework by mandating duration review hearings at specified time intervals, and the Parole Board's failure to comply with the statutory timeline deprived Aragon and Lusk of the opportunity to regain their full freedom. Simply put, the Parole Board's delays undermined the procedural safeguards meant to protect these sex offender parolees from unnecessary continued restrictions on their liberty. Due process applies. But the question remains: What process is due?

{33} The fundamental requirement of procedural due process is an opportunity to be heard "at a meaningful time and in a meaningful manner" in proceedings that safeguard the right for which constitutional protection is invoked. *Mathews*, 424 U.S. at 333 (internal quotation marks and citation omitted); *see* 16B Am. Jur. 2d *Constitutional Law* § 958 (2009) ("The fundamental requirement of due process is an opportunity to be heard upon such notice and in such proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." (footnote

21

omitted)). The question we now turn to is whether the procedures—or lack thereof—followed in these cases were constitutionally adequate.

**2.     Determining whether the procedures to remedy the deprivations satisfied due process**

{34}     To assess whether the procedures followed for Aragon and Lusk satisfied their right to procedural due process, we apply the three-factor balancing test set forth in *Mathews*, 424 U.S. at 334-35. *See Houidobre*, 2025-NMSC-007, ¶ 27 (explaining that "New Mexico courts apply the three-factor test" from *Mathews* "to determine whether the administrative procedures employed comport with the Fourteenth Amendment"); *Cooley*, 2023-NMCA-089, ¶ 31 ("If there is a protected interest that has been deprived by the state, answering whether procedural due process was provided requires us to balance that interest against the state's interests as guided by the factors in *Mathews*."); *see also State v. Rotherham*, 1996-NMSC-048, ¶ 51, 122 N.M. 246, 923 P.2d 1131 (stating that the United States Supreme Court applies the *Mathews* test in civil and criminal cases). The *Mathews* factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

{35}    The Parole Board, following orders from the district court, held duration review hearings for Aragon and Lusk roughly thirteen years after Aragon began serving his parole and nearly twelve years after Lusk commenced serving his parole. But Section 31-21-10.1(C) entitled them to a timely initial duration review hearing five years after they started serving parole. The Parole Board's severe delay affected the constitutionality of Aragon and Lusk's continued detention on parole, and we explain why by examining the *Mathews* factors below.

**a.    First factor (the private interest that will be affected by the official action)**

{36}    As previously discussed, Aragon and Lusk have a constitutionally protected interest in a timely parole duration review hearing. That interest implicates a significant private interest in avoiding unnecessarily prolonged restrictions on their liberty. *See People ex rel. Fortunato v. Warden*, *George Motchan Det. Ctr.*, 9 N.Y.S.3d 849, 854 (N.Y. Sup. Ct., Bronx Cnty. 2015) ("It is indisputable that liberty is a significant private interest."); *Drayton v. McCall*, 584 F.2d 1208, 1219 (2d Cir. 1978) ("[A] parole grantee although not yet free like a parolee has the taste of freedom in his mouth, the smell of freedom in the air, the touch of freedom within his grasp."); *see also Cooley*, 2023-NMCA-089, ¶¶ 32-35 (recognizing, in the probation context, the statutorily created liberty interest "is in being released from probation unless the state proves to a reasonable certainty that probation must

23

continue"). This interest is especially weighty when, as here, the length of the delay is substantial.

**b.    Second factor (the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards)**

{37}    This is the most important factor in our analysis. It requires consideration of any and all evidence showing that the lack of the required duration review hearings increased the risk that Aragon and Lusk were erroneously continued on parole during the period of the delay. For example, demonstrating to the district court what timely and relevant evidence could have been presented at a timely duration review hearing may suffice to establish an increased risk caused by the lack of a hearing. Another example is if the state relies on conduct that occurred after the time the initial duration review hearing should have taken place, but before a later hearing should have taken place, when the sex offender was demonstrating such progress that he would have had a better chance of having the indeterminate parole term terminated at the initial hearing. We emphasize that the foregoing examples are not intended to be limiting in any way and should not be interpreted as restricting the presentation of facts that may demonstrate a constitutional violation justifying release from parole. This, however, is not the end of the inquiry.

{38} The Legislature has declared its intention that the risk for sexual offenders suffering from unnecessarily prolonged deprivations of their liberty is to be minimized once they have served their initial five years of supervised parole. At the end of the initial five years and then at two-and-one-half-year intervals after that, Section 31-21-10.1(C) expressly provides: "At each review hearing, the attorney general shall bear the burden of proving by clear and convincing evidence that the sex offender should remain on parole." The proof that supervised parole should continue consists of facts demonstrating that the continued supervised parole of the sex offender "is deemed essential in the light of the needs of public safety and [the sex offender's] own welfare." *See* § 31-21-4 (stating the purpose of the Probation and Parole Act). Significantly, the attorney general's burden of proving that the sex offender should remain on parole at each hearing is "by clear and convincing evidence." Section 31-21-10.1(C). Clear and convincing evidence is "evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact-finder's mind is left with an abiding conviction that the evidence is true." *State v. Groves*, 2018-NMSC-006, ¶ 36, 410 P.3d 193 (brackets, internal quotation marks, and citation omitted). This is a demanding standard, and if the attorney general fails to satisfy its burden of proof, the statutory *default* is that

the parolee is *entitled to release*. This is the process the Legislature has determined is due to sex offenders serving indeterminate parole.

{39} In these cases, however, no hearing was provided for Aragon for thirteen years after he began serving his parole and for Lusk for twelve years after he began serving his parole. Under a strict application of Section 31-21-10.1(C), both parolees should have received no less than three duration review hearings over the course of such periods of time. Because the statutory default is release when the proof fails to demonstrate that continued parole is "essential" at the required five-year and two-and-one-half-year intervals, *see* § 31-21-4, and there were no hearings for an extended period of time for both parolees, we conclude that the lack of procedures significantly increased the risk of erroneous deprivation of Aragon's and Lusk's relevant liberty interests. Our rigorous application of this *Mathews* factor honors the mandatory plain language of Section 31-21-10.1(C), including the state's burden in duration review hearings.

**c.     Third factor (the State's interest)**

{40} The state undoubtedly has a strong interest in rehabilitating and reintegrating convicted sex offenders through indeterminate parole while also ensuring the safety of the community. *See Cooley*, 2023-NMCA-089, ¶ 50 ("[T]he state certainly has an interest in rehabilitating convicted sex offenders through probation and keeping the

community safe."). The purpose of parole is to ensure that "treatment of persons convicted of crime shall take into consideration their individual characteristics, circumstances, needs and personalities" and that persons convicted of a crime "shall be dealt with . . . under parole supervision when a period of institutional treatment is deemed essential in light of the needs of public safety and their own welfare." Section 31-21-4 (stating the construction and purpose of the Probation and Parole Act).

### d. Balancing the *Mathews* factors

{41}     To determine whether due process has been satisfied in these cases, we must balance these factors. On the one hand, Aragon's and Lusk's private interest is especially weighty given the extended length of time they remained on parole due to the Parole Board's failure to provide a statutorily required duration review hearing. On the other hand, the Parole Board's interest is also significant in complying with its statutory duties to ensure that sexual offenders who pose a continued threat to the public remain on parole until they have been rehabilitated or the maximum length of their parole sentence has been served. We also note that, for over twenty years, timely sex offender duration review hearings have been required by law. *See* 2003 N.M. Laws, 1st Spec. Sess., ch.1, § 9 (establishing indeterminate sex offender parole). Therefore, there is only a slight burden on the Parole Board to

27

put in place measures it has already been obligated to follow for over two decades. This is especially true when considering the significant advantages of holding timely duration review hearings for sex offender parolees who have potentially had their liberty restricted longer than necessary. *See Cooley*, 2023-NMCA-089, ¶ 51 ("Holding a duration review hearing . . . poses no additional significant financial or administrative burdens on the state and reflects a balance the Legislature has already adopted to serve both probationers and the public."); *Thompson*, 2022-NMSC-023, ¶ 25 ("After the sex offender serves the minimum five years of parole, the offender gets a hearing to see if [they] should remain on parole. This makes sense.").

**3.      Procedure on remand**

{42}      We hold that the failure of the Parole Board to hold timely duration review hearings in the cases before us under Section 31-21-10.1(C) violated due process. It is also clear from what we have said that the absence of a timely duration review hearing does not per se entitle a sex offender parolee to immediate release. In both cases before us, no evidentiary hearing was conducted before the district court ordered the Parole Board to conduct a duration review hearing. The result is that neither party was given an opportunity to present evidence in favor of or against release resulting from the due process violation. Moreover, the record lacks the evidence that was presented by the Attorney General to the Parole Board in each

28

case, as well as the Parole Board's reasoning to continue indeterminate parole for Aragon and Lusk. As a consequence, remand is necessary with instructions to allow each party to present evidence and arguments to the district court on their respective positions as to whether either Aragon or Lusk was prejudiced by the Parole Board's failure to hold a hearing or is entitled to release on a writ of habeas corpus, or other relief, in accordance with standards and guidelines we have set forth herein. Pursuant to our discussion of the second *Mathews* factor, the State, in arguing against prejudice, namely, the risk of an erroneous deprivation, is precluded from using evidence supporting continued parole that was not available as of the date of a *timely* hearing. *See N.M. Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 39, 363 P.3d 1176 ("[F]undamental fairness is the essence of due process."). In the event a parolee points to the subsequent duration review hearings that *should have been conducted* during the delay period pursuant to Section 31-21-10.1(C)'s mandatory language, the State would be entitled to rebut with additional evidence timely to the relevant date the hearing should have occurred, as well as with extenuating circumstances contributing to the length of delay. *See Cooley*, 2023-NMCA-089, ¶ 37 (noting in the probation context that "in practice, there is no doubt the reality of our justice system will lead to delays"). In fashioning a remedy, if any, we remind the district courts that "remedies for constitutional violations should be narrowly

29

tailored and take into account competing interests." *Lopez v. LeMaster*, 2003-NMSC-003, ¶ 21, 133 N.M. 59, 61 P.3d 185.

## C.    Remaining Arguments

{43}    Aragon's arguments that Section 31-21-10.1(C) is facially unconstitutional for various reasons were not preserved in the district court, and we decline to address them for the first time on appeal. *Compare Thompson*, 2022-NMSC-023, ¶¶ 27-28 (declining to address constitutional challenges which were raised for the first time in the answer brief), *with Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 18, 142 N.M. 89, 163 P.3d 476 (stating that the petitioner's state constitutional claim was preserved when it was raised in the "Supplemental Memorandum on Petition for Writ of Habeas Corpus"). However, this decision is without prejudice to allowing Aragon and Lusk to present these arguments at their hearings on remand.

## III.    CONCLUSION

{44}    These cases are remanded to the district court for an evidentiary hearing in accordance with this opinion.

{45}    **IT IS SO ORDERED.**

 

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**